THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ALBERT YALE, et al., )<br><br>        Plaintiffs, )<br>vs. )<br><br>COMMUNITYONE BANK, N.A., )<br><br>        Defendant. )<br> )<br> ) | Civil Action No. 3:15-cv-403-RJC-DSC |

## DEFENDANT COMMUNITYONE BANK, N.A.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendant CommunityOne Bank, N.A. ("CommunityOne" or the "Bank"), by its attorneys, hereby submits its Brief in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint.

## INTRODUCTION

Plaintiffs' untimely Motion for Leave to File Second Amended Complaint should be denied for the following reasons. First, plaintiffs' motion was filed after the motions deadline set by the Pretrial Order and Case Management Plan, and plaintiffs have failed to show good cause for their failure to meet this deadline. Second, plaintiffs' motion is unduly delayed and granting it would be severely prejudicial to CommunityOne. Third, plaintiffs' motion is made in bad faith, as evidenced by the many knowingly false or recklessly made new allegations in the proposed Second Amended Complaint, the substantial shift in legal theories, and the timing of the motion. Fourth, allowing the new claims that plaintiffs seek leave to add would be futile as such claims

would also be subject to dismissal.  Accordingly, CommunityOne respectfully requests that this Court deny plaintiffs' motion.

## I.  BACKGROUND AND PROCEDURAL HISTORY

*Lawsuit Background*

This lawsuit arises from a Ponzi scheme operated by Keith Simmons ("Simmons") using his company, Black Diamond Capital Solutions, from April 2007 until December 2009 when Simmons was arrested.  (DE No. 30-1, ¶¶ 5, 7).  Plaintiffs allege that they are the victims of this Ponzi scheme, which Simmons used to defraud them of millions of dollars during this time period. Simmons was convicted on December 16, 2010.  (DE No. 30-1, ¶ 18).  Plaintiffs waited to file this lawsuit against CommunityOne until August 31, 2015.

*Plaintiffs' Original Complaint and First Amended Complaint*

Plaintiffs' original complaint against CommunityOne included eight claims:  Count I – Violation of the Uniform Fiduciaries Act (Actual Knowledge); Count II – Violation of the Uniform Fiduciaries Act (G.S. § 32-6); Count III – Violation of the Uniform Fiduciaries Act (Bad Faith); Count IV – Aiding and Abetting Fraud; Count V – Aiding and Abetting Breach of Fiduciary Duty; Count VI – Breach of Fiduciary Duty; Count VII – Conspiracy to Breach Fiduciary Duties; and Count VIII – Conspiracy to Violate Civil RICO 18 U.S.C. § 1962(d).  (DE No. 1).  On December 9, 2015, CommunityOne filed a motion to dismiss the original complaint.[1]  (DE No. 9).  On March 11, 2016, the Court consolidated this case with another case (CCR Data Systems, Inc. v. CommunityOne Bank, N.A., No. 3:16-cv-00063-RJC-DSC) that was filed on February 5, 2016.

---

[1] The Motion to Dismiss argument with respect to the Fiduciary Act Claims was limited to the statute of limitations because CommunityOne was stuck at the 12(b)(6) stage with plaintiffs allegations that the Black Diamond Account was a fiduciary account and that CommunityOne knew that Keith Simmons was acting as a fiduciary for plaintiffs. These allegations have not been supported by the facts in discovery, which is one of the reasons for CommunityOne's Motion for Summary Judgment.

(DE No. 20). On August 10, 2016, Magistrate Judge Cayer entered a Memorandum and Recommendation, recommending that the District Court dismiss all of plaintiffs' claims except for plaintiffs' claims for alleged violations of the Uniform Fiduciaries Act.[2] (DE No. 21).

On August 29, 2016, plaintiffs filed a Motion for Leave to File Amended Complaint, attempting to correct the deficiencies in their federal RICO claim and conspiracy to breach fiduciary duties claim in order to avoid dismissal. (DE No. 23, 24). CommunityOne opposed this proposed amendment, and the Court issued a Memorandum and Order on September 27, 2016 denying the proposed amendment of those claims as futile, and ordering plaintiffs to file a First Amended Complaint limited to claims under the Uniform Fiduciaries Act within 14 days. (DE No. 28). On October 11, 2016, plaintiffs filed their First Amended Complaint (DE No. 29), which was supplanted by Plaintiffs' Corrected First Amended Complaint a day later. (DE No. 30-1).

The First Amended Complaint included 100 numbered paragraphs and two claims under the Uniform Fiduciaries Act. Plaintiffs elected not to include one of their UFA claims in the original Complaint, a claim under N.C. Gen. Stat. § 32-6 that concerned alleged liability of a bank when fiduciary funds are used to pay a bank debt. The First Amended Complaint was centered around allegations that the Bank (1) knew that the Black Diamond Capital Solutions Account at CommunityOne (the "BDCS Account") was a fiduciary account used to maintain investor funds from the plaintiffs; (2) ignored hundreds of alerts of suspicious activity on the account; and (3) failed to act in a commercially reasonable manner by allowing Simmons to misappropriate fiduciary funds from the account and not informing law enforcement, regulatory agencies, or the plaintiffs. (DE 30-1, ¶¶ 70-84).

---

[2] Prior to this Court ruling on CommunityOne's motion, Plaintiffs voluntarily dismissed their breach of fiduciary duty claim. (DE No. 16).

***Discovery Conducted by CommunityOne***

On April 11, 2017, the Court issued its Pretrial Order and Case Management Plan, providing that fact discovery would conclude on November 30, 2017 and that all motions (except motions in limine and motions to continue) were required to be filed no later than March 16, 2018.[3] (DE No. 42). Shortly thereafter, on April 19, 2017, CommunityOne served its First Set of Interrogatories and First Request for Production of Documents to plaintiffs, which focused on the contentions made by plaintiffs in the First Amended Complaint and the collection of relevant documents to conduct depositions.

In October and November, 2017, CommunityOne's counsel traveled to seven states to take the depositions of plaintiffs. The only reason CommunityOne didn't complete all thirty-one depositions before the November 30th fact discovery deadline was because: (1) CCR Data failed to appear for its deposition on November 28, 2017, and the Court ordered that deposition to be taken in February 2018 and sanctioned CCR data and plaintiffs' counsel for failing to appear; and (2) eleven plaintiffs failed to dismiss their claims after their attorney represented that they would be dismissed, and the Court ordered those depositions to be taken in February 2018 and sanctioned those plaintiffs and plaintiffs' counsel for this conduct.

Plaintiffs did not respond to CommunityOne's April 19, 2017 document requests until July 21, 2017, and even then, responses for some plaintiffs were missing. Plaintiffs served additional responses on August 8, 2017, but even then, when depositions were taken in October and November, it became apparent that many plaintiffs' documents had not been produced. On August 15, 2017 and August 21, 2017, CommunityOne's counsel reminded plaintiffs' counsel that Safe Harbor Foundation and other plaintiffs had not provided responses or documents. As of Safe

---

[3] The parties submitted a joint proposed on scheduling order with these dates on March 21, 2017. (DE No. 42).

Harbor Foundation's deposition on February 14, 2018, Safe Harbor had not produced any documents. It produced its first set of documents on March 9, 2018, close to one month after Safe Harbor was deposed, more than three months after the fact discovery deadline, and 11 months after CommunityOne's document requests were served.

### *Discovery Conducted by Plaintiffs*

Plaintiffs waited five months after the beginning of the discovery period to issue any written discovery requests to CommunityOne. On September 13, 2017, plaintiffs served 137 requests for production of documents on CommunityOne - less than 80 days prior to the end of the fact discovery period on November 30, 2017. After the entry of the Consent Protective Order on October 20, 2016 (DE No. 46), CommunityOne responded to plaintiffs' requests for production by producing 5,424 pages of documents on November 1, 2017; 48,621 pages of documents on November 2, 2017; 1,099 pages of documents on November 17, 2017; 13,484 pages of documents on December 21, 2017, and 10,687 pages of documents on December 29, 2017.

CommunityOne was able to produce in short order the relevant transaction records, account statements, account opening documentation, wire transfer records, bank policies and procedures, employee directories, organizational charts, and employee manuals requested by plaintiffs. CommunityOne's production of many e-mails and other documents was delayed by plaintiffs counsel's failure to respond to repeated requests in October 2017 to consult and agree on keyword search terms to be used to narrow the scope of the several hundred thousand pages of documents that remained to be reviewed for responsiveness. After plaintiffs' counsel finally responded to this request on November 14, 2017, CommunityOne conducted its search and produced the remaining responsive documents on December 21 and December 29, 2017.

After failing to notice or take a single deposition during the fact discovery period, plaintiffs moved on November 8, 2017 to extend the discovery period until January 23, 2018, which CommunityOne opposed. (DE No. 47-49). The Court denied the motion but allowed plaintiffs leave to take the depositions of four specific individuals in January 2018. (DE No. 50). Instead of taking those depositions, plaintiffs in January 2018 asked the Court for and received leave to change those depositions to a 30(b)(6) deposition of the Bank, which took place on February 22, 2018. (DE No. 58, 59, 65).

***Expert Witnesses***

Plaintiffs elected not to designate an expert witness. For this reason, and due to the fact that the evidence obtained in discovery did not support plaintiffs' two remaining claims, CommunityOne also elected not to designate an expert witness.

***CommunityOne's Motion for Summary Judgment and Plaintiff's Attempt to Restart Their Case with New Allegations and Theories***

With fact and expert discovery complete, CommunityOne filed its motion for summary judgment on March 16, 2018, the deadline established by the Court in the Pretrial Order and Case Management Plan for filing all motions except motions in limine and motions to continue. (DE No. 71). The next day, on March 17, 2018, plaintiffs filed an untimely motion for leave to amend to bring new claims against CommunityOne. (DE No. 73). In their motion, plaintiffs argue that they should be permitted to amend their complaint yet again to add numerous new claims because the proposed Second Amended Complaint "clarifies existing allegations with facts and evidence obtained through discovery and adds new claims that arise from the transactions, occurrences, and facts in Plaintiffs' original pleading." (DE No. 74 at 3). However, in reality, plaintiffs completely

reinvent their complaint with new allegations[4] and new theories of liability and seek permission to bring ten total claims against CommunityOne: (1) four claims for violations of the Uniform Fiduciaries Act; (2) one claim for conspiracy to violate North Carolina RICO; (3) three claims for violations of North Carolina's unfair and deceptive trade practices act; (4) one claim for conspiracy to commit fraud; and (5) one claim for fraud in the inducement.

## II.    LEGAL STANDARD

Because plaintiffs' motion has been made after the motions deadline, plaintiffs must show "good cause" pursuant to Rule 16(b) of the Federal Rules of Civil Procedure for their failure to meet the deadlines in the Pretrial Order and Case Management Plan. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (affirming denial of motion to amend made in response to summary judgment motion).

Federal Rule of Civil Procedure 15(a)(2) provides that a plaintiff cannot amend a complaint after a responsive pleading has been served without first obtaining leave of Court. While district courts may give a plaintiff leave to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), a district court "has discretion to deny a motion to amend a complaint so long as it does not outright refuse to grant leave without any justifying reason." *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010). According to the Fourth Circuit Court of Appeals, "a district court does not abuse its discretion in denying leave to amend if there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment." *Howard v. Inova Healthcare Servs.,* 302 F. App'x 166, 181 (4th Cir. 2008) (internal

---

[4] The new allegations central to the proposed Second Amended Complaint reference documents that were produced to plaintiffs on November 1, 2017 – more than four months prior to plaintiffs' motion for leave to amend.

quotations omitted).  Plaintiffs' motion for leave to amend should be denied on each of these grounds.

## III.    ARGUMENT

### A.    Plaintiffs Have Failed to Show Good Cause for Their Failure to Meet the Deadline for Motions in the Pretrial Order and Case Management Plan.

The Pretrial Order and Case Management Plan provides in Section II(A) that "All motions except motions in limine and motions to continue shall be filed no later than March 16, 2018." Plaintiffs filed their Motion for Leave to File Second Amended Complaint on March 17, 2018. "After the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).  Plaintiffs have made no attempt to offer any explanation as to why they failed to meet the motions deadline, but instead incorrectly contend that the Pretrial Order and Case Management Plan "doesn't impose a filing deadline for amended complaints."  (DE No. 74). Plaintiffs' failure to even attempt to show good cause for failing to meet the motions deadline requires that their motion be denied under Rule 16(b) without even reaching the other arguments under Rule 15(a) that weigh against allowing this amendment. *Nourison Rug Corp.*, 535 F.3d at 299.

### B.    Plaintiffs' Untimely Motion is Unduly Delayed and Prejudicial to CommunityOne.

It is well-established in this circuit that a plaintiff bears the burden to amend a complaint as soon as possible.  *Deasy v. Hill,* 833 F.2d 38, 41 (4th Cir. 1987) ("a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.  A party who delays in seeking an amendment is acting contrary to the rule") (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* § 1488 (1971)).  Where a plaintiff fails to amend a

complaint as soon as the necessity becomes apparent, the Fourth Circuit has held that the amendment may be denied as prejudicial. *See Glaser v. Enzo Biochem, Inc.,* 464 F.3d 474, 480 (4th Cir. 2006) ("Plaintiffs had an unprecedented thirteen months of unilateral pre-complaint discovery ... and had already set forth four iterations of their complaint ... plaintiffs many opportunities to present their claim warranted denial of the motion to amend."); *Marsh v. WR. Grace Co*., 80 F. App'x 883, 889 (4th Cir. 2000) (plaintiff could not amend motion to assert new claims that had been available for several years); *Chaundry v. Gallerizzo,* 174 F.3d 394,404 (4th Cir. 1998) (denying plaintiffs' motion to amend because they could have included their new claim in their previously-filed second amended complaint, but failed to do so).

Plaintiffs are asking the Court for permission to press the reset button on their case, despite having had multiple opportunities to amend their complaint in a timely manner and despite having previously been denied leave to amend in 2016.[5]  Now, facing a summary judgment motion, plaintiffs seek permission to file a new ***285-paragraph*** Second Amended Complaint, asserting ***ten*** claims based around an entirely new theory that the Bank allegedly (1) discovered the Ponzi scheme in January 2009; (2) decided to participate as a co-conspirator rather than report the scheme to authorities; (3) received compensation from Simmons for its participation in the scheme; and (4) conspired with federal prosecutors to hide these facts from the Court and from the plaintiffs. (SAC ¶¶ 10-27).  Instead of two claims under the North Carolina Uniform Fiduciaries Act, plaintiffs seek leave to assert four claims under the North Carolina Uniform Fiduciaries Act, one claim under the North Carolina RICO statute, three claims under the North Carolina Unfair and

---

[5] After having most of their claims recommended for dismissal at the 12(b)(6) stage in August 2016 (DE No. 21), plaintiffs sought to amend their complaint to salvage their federal RICO and conspiracy to breach fiduciary duty claim.  (DE No. 23, 24).  The Court found plaintiffs' proposed amendment to be futile, and ordered plaintiffs to file an amended complaint limited to claims under the Uniform Fiduciaries Act.  (DE No. 28).

Deceptive Trade Practices Act, one claim for conspiracy to commit fraud, and one claim for fraud in the inducement.  (SAC ¶¶ 159-285).

The documents that plaintiffs cite in support of these new allegations – the BDCS Account statements showing charges for "account analysis" and the checks payable from Black Diamond to CommunityOne – were all produced to plaintiffs with CommunityOne's first production on November 1, 2017, more than four months before plaintiffs filed their motion seeking leave to amend.  Plaintiffs have offered no explanation as to why they waited so long to file this motion. Moreover, if plaintiffs had not waited five months after the start of discovery to serve their requests for production, these documents would have been produced much earlier by CommunityOne.

Since October 2016, CommunityOne has focused on defending itself against only two claims alleging violations of the Uniform Fiduciaries Act. CommunityOne served written discovery and took 31 depositions to address the primary issues of whether or not (1) these claims should be time-barred; (2) the Black Diamond Account was a fiduciary account; and (3) CommunityOne Bank knew that Simmons was acting as a fiduciary for the plaintiffs.  Now that CommunityOne has proven its defenses through discovery and moved for summary judgment, plaintiffs are attempting to completely reconfigure this case by asserting new factual allegations, new theories of liability, and new claims that have different elements and defenses.  Allowing this amendment at this late juncture - four months after the fact discovery deadline and while CommunityOne's summary judgment motion is pending - would require CommunityOne to start the litigation process all over again.  CommunityOne would have to research each new claim and its applicable defenses, investigate each new factual allegation and theory, possibly serve more written discovery and take more depositions, reconsider its decision not to designate an expert witness, and prepare another dispositive motion.  It would be impossible to accomplish these tasks

prior to the scheduled trial date. In addition, allowing these claims would deprive CommunityOne of sufficient time to seek disposition of plaintiffs' claims prior to trial.

In *Smith v. Waverly Partners, LLC*, No. 3:10-cv-00-28-RLV-DSC, 2012 WL 3645324 (W.D.N.C. Aug. 23, 2012), this Court denied a motion for leave to amend where the plaintiff sought leave to add a negligence claim, finding that allowing the amendment would be unduly prejudicial to the defendant. The Court noted the "inequity" of "adding a claim post-discovery" after the defendant had "already invested notable resources in responding to Plaintiff's many claims," and said that the "extent to which Plaintiff may continuously use the Court and defense counsel to test whether she has conceived any claims upon which relief can be granted is not without limit." *Id.* at *4. *See also Equal Rights Ctr.,* 602 F.3d at 603 (addition of new claim after close of discovery and on eve of dispositive motion deadline is prejudicial because "it would have required [the court] to reopen discovery and thereby prejudice [defendant]."); *Marsh,* 80 F. App'x at 889 (denying plaintiffs motion to add new claim after years of discovery and before the dispositive motion deadline because defendants would be forced to engage in further discovery based on plaintiffs new claim); *Deasy,* 833 F.2d at 41-42 (denying plaintiffs motion to add negligence claim because it would require additional discovery and continued litigation); *Littleton v. Harkleroad*, No. 1:11-cv-265-RJC, 2013 WL 3449176 (W.D.N.C. July 9, 2013) (denying motion for leave to amend almost two years after case was filed); *Tailored Chemical, Inc. v. Town of Long View*, No. 5:10CV174-RLV-DSC, 2012 WL 13018241 (W.D.N.C. Feb. 13, 2012) (denying motion for leave to file amended complaint that came more than five months after the discovery period ended because it would unduly prejudice defendants so close to the trial date); *Team Gordon, Inc. v. Fruit of the Loom, Inc.*, No. 3:P06-cv-201-RJC, 2009 WL 10685180 (W.D.N.C. Feb. 27, 2009) (denying leave to amend complaint "over two years and five months

after the original complaint, over three months after the close of discovery, and when multiple summary judgment motions were pending").

In a case where the events at issue occurred between 2007 and 2009, and where the original complaint was filed in August 2015, we have reached "the time which must arrive at some stage of every litigation when plaintiff must be required to stand upon the allegations he is asserting." *Hall v. United Techs. Corp.,* 872 F. Supp. 1094, 1101 (D. Conn. 1995). Accordingly, plaintiffs' motion for leave to amend their complaint for a second time should be denied.

### C.     Plaintiffs' Proposed Second Amended Complaint is Made in Bad Faith.

Bad faith constitutes another valid reason to deny an amendment under Rule 15(a). *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (162); 6 Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, *Federal Practice and Procedure Civ.* § 1487 (3d ed. 2017). Plaintiffs' proposed Second Amended Complaint here is made in bad faith because it (1) includes blatantly false allegations; (2) constitutes a substantial shift away from plaintiffs' prior legal theories; and (3) evidences a continuation of plaintiffs' pattern of dilatory behavior.

1.     The Proposed Second Amended Complaint Is Made In Bad Faith Because It Includes Knowingly False or Recklessly Made Allegations.

Plaintiffs' proposed Second Amended Complaint includes allegations that have no basis in fact, including an unfounded theory that CommunityOne, McGuireWoods LLP, and federal prosecutors allegedly conspired in 2011 to withhold key information from the Court in a Deferred Prosecution Agreement and to hide the revelation that CommunityOne had allegedly discovered the Black Diamond Ponzi scheme in January or February 2009. Plaintiffs spend several pages in the early part of their Second Amended Complaint describing this alleged conspiracy (*see* SAC ¶¶ 10-27) and use this as the foundation for their new allegations and theories.

Plaintiffs claim that the April 2011 Deferred Prosecution Agreement in the criminal case brought against the Bank was negotiated by McGuireWoods LLP on behalf of the Bank, and was "carefully crafted" to mention only BSA violations and not "the Bank's analysis and investigation of the BDCS account and its knowledge of and participation as co-conspirator in largest Ponzi scheme in North Carolina history." (SAC ¶ 20). Plaintiffs allege that federal prosecutors intentionally left this out of the Deferred Prosecution Agreement and failed to inform the Court of these facts so that the Bank could minimize its risk of civil litigation and avoid financial collapse (SAC ¶¶ 21, 23). To round out the alleged conspiracy, plaintiffs claim that McGuireWoods LLP "has since added and includes as one of its partners one of the federal prosecutors who lead (sic) the criminal litigations related to Simmons and the Black Diamond Ponzi scheme."[6] (SAC ¶ 26).

In making these baseless and defamatory allegations against the Bank, this law firm, and federal prosecutors, plaintiffs either intentionally ignored plainly available documentary evidence or intentionally misrepresented facts, with the likely sole purpose of trying to avoid having their claims dismissed at summary judgment or to attempt to gain leverage in mediation.[7] For example, plaintiffs' allegation that McGuireWoods LLP represented the Bank in 2011 and negotiated the Deferred Prosecution Agreement (the "DPA") is false. The DPA itself, which plaintiffs refer to repeatedly in the proposed Second Amended Complaint and which was filed with this Court on April 27, 2011 in case number 3:11CR122, contains a Certificate of Counsel on page 15, where

---

[6] Kurt W. Meyers, a respected former Assistant United States Attorney, led the criminal prosecution of Simmons and the charge against CommunityOne that resulted in the Deferred Prosecution Agreement. He joined McGuireWoods in November 2016 but has not participated in the defense of CommunityOne Bank in this case. Plaintiffs offered no evidence of any conspiracy, nor any reason for their incendiary allegations.

[7] The motion to file the 69-page Second Amended Complaint was filed on the Saturday before mediation was to begin on Monday and after CommunityOne filed its Motion for Summary Judgment.

James W. Cooper of Arnold & Porter, LLP states that he is counsel for the Bank, has reviewed the DPA, and advised the Bank with respect to the DPA.

These new contentions also depend on the Bank's alleged discovery of the Ponzi scheme in January 2009 through its "account analysis" of the BDCS Account, which again, has no basis in fact. Plaintiffs allege that the Bank (1) discovered the Ponzi scheme in January 2009 after beginning a detailed "account analysis" of the individual transactions on the Black Diamond Capital Solutions Account (the "BDCS Account") (SAC ¶ 106); (2) decided to let the BDCS Account remain open and continue to assist Simmons in his scheme and engage in a "cover-up" that "probably involved the highest levels of Bank management" (SAC ¶ 108); (3) charged the BDCS Account for the cost associated with the detailed "account analysis" for several successive months (SAC ¶ 110); (4) alerted Simmons to the Bank's detailed analysis of the BDCS Account by including the recurring charge on the BDCS monthly account statements (SAC ¶ 110); and (5) received compensation from Black Diamond in the form of seven checks drawn on the BDCS Account made payable to the Bank totaling more than $350,000 (SAC ¶ 157).

The sole source of plaintiffs' contentions appears to be the monthly account statements for the BDCS Account produced in this case on November 1, 2017, which reflect "account analysis" charges during the months of February to September 2009. Plaintiffs have no basis whatsoever for their claims that the "account analysis" reflected a detailed examination by the Bank of individual transactions on the BDCS Account that gave the Bank actual knowledge of the Ponzi scheme in January 2009. If plaintiffs had simply performed a Google search for "account analysis charges on a bank statement," they could have discovered the meaning of these "account analysis"

charges.[8]   Bank executive Daniel Dent explains what "account analysis" charges are in his declaration, which is attached as **Exhibit A**:

> "Account analysis" is a way that banks determine monthly service charges for business checking accounts based on the balance in the account and the specific services rendered during each statement period (such as maintenance fees, fees per check or per deposit, stop payment fees, wire transfer fees, cashier's check fees, and treasury services fees).  As balances decline, an "account analysis" fee may be charged, whereas the fee may be completely offset during months with higher balances.  Due to the variability of the balances and services provided throughout a statement period, the fee can, and usually does, change monthly based upon the specific services provided and the average balance in the account.

Dent Dec., ¶ 12.

As further evidence that plaintiffs may have intentionally misrepresented the nature of "account analysis" charges in their proposed Second Amended Complaint, plaintiffs cite a September 2008 email exchange in Paragraph 89 of their proposed Second Amended Complaint which discusses account analysis charges.  (SAC ¶ 89).  In Paragraph 89, plaintiffs quote several portions of the email exchange which discuss refunding account charges for wire transfers on the BDCS Account.  *Id.*  Notably, plaintiffs do not quote the portions of the email saying that the account was charged for wires because it "has not been analyzing" or that "[b]ased on the balances this account has carried they would not have experienced any charges if the account had been passing the charges to analysis."  (*See* **Exhibit B,** COMM068587-68589).

As for the seven checks totaling more than $350,000 payable from Black Diamond to the Bank, plaintiffs must know the purpose and nature of these checks as well.  Plaintiffs identified these checks as a topic in the 30(b)(6) deposition of the Bank, but failed to ask any questions about

---

[8] For example, see:
https://www.firsttennessee.com/corporate/products-and-services/deposit-solutions-category/commercial-checking/account-analysis-checking
https://www.regions.com/virtualdocuments/Business_Analyzed_Fee_Schedule.pdf
https://www.businessbankoftexas.com/business-resource-center/commercial-account-fees-debunked-and-demystified.htm

them at the deposition. Dent Dec. ¶ 5. If plaintiffs had asked, they would have learned that each of these checks payable to the Bank were used to purchase official checks from the Bank in corresponding amounts that were payable to third parties. *Id.* ¶ 7. Each of the referenced checks were produced by the Bank to plaintiffs along with the corresponding official check on the immediately adjacent page in the Bates numbering. *Id.* ¶¶ 6-8. Thus, plaintiffs attempt to characterize these checks as payments from Black Diamond to the Bank is befuddling.

Plaintiffs tell quite a tale of conspiracy, fraud, and deceit – but the material allegations of this tale have no basis in fact. At best, plaintiffs have weaved this web of falsehoods by ignoring plainly available evidence. At worst, plaintiffs have intentionally misrepresented the facts in order to try to save their case from summary judgment. Either way, these new allegations are evidence of plaintiffs' bad faith in seeking leave to amend.

2.     Plaintiffs' Substantially Shifting Legal Theories are Evidence of Bad Faith.

Filing a new complaint in an attempt to forestall ruling on a motion for summary judgment may evidence bad faith. *Reisner v. General Motors Corp.*, 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981). Shifting legal theories and inconsistent allegations can "raise a substantial doubt as to the good faith of the plaintiffs' counsel in asserting them." *Id.* at 1172 n. 10; *see also Streambend Prop. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003 (8th Cir. 2015) (denying leave to file a third and fourth amended complaint when leave was sought while motions to dismiss the second amended complaint were pending and that leave to amend appeared to have been sought in bad faith and with dilatory motive to avoid dismissal).

In this case, plaintiffs are proposing to scrap their two-count, 100-paragraph First Amended Complaint almost entirely, and replace it with a ten-count, 285-paragraph Second Amended Complaint, even though the parties have been litigating the claims in the First Amended Complaint

since October 2016.  Plaintiffs also propose to add Uniform Fiduciary Act claims of the same type that they voluntarily elected not to pursue when the First Amended Complaint was filed in October 2016.

Plaintiffs' First Amended Complaint was centered around the allegations that the Bank (1) knew that the BDCS Account was a fiduciary account used to maintain investor funds from the plaintiffs; (2) ignored hundreds of alerts of suspicious activity on the account; and (3) failed to act in a commercially reasonable manner by allowing Simmons to misappropriate fiduciary funds from the account and not informing law enforcement, regulatory agencies, or the plaintiffs.  (DE 30-1, ¶¶ 70-84).  Plaintiffs failed to find sufficient evidence to support these allegations during discovery, and now even acknowledge that they cannot rely on the Deferred Prosecution Agreement to establish the Bank's liability in this case, as it "provides no apparent basis for claims by victims of the Ponzi scheme because BSA violations are not a basis for private causes of action." (SAC ¶ 20).  Now, faced with a summary judgment motion that should result in the complete dismissal of their case, plaintiffs are requesting leave to file an entirely new complaint based on a different legal theory and new factual allegations (many of which are demonstrably false, as noted above).

3.    The Timing of Plaintiffs' Motion Constitutes Bad Faith Because It is Part of a Broader Pattern of Delay and Failure to Adhere to Court Orders.

Plaintiffs filed their motion on March 17, 2018 – more than two and a half years after plaintiffs filed their original complaint; more than 17 months after plaintiffs filed their First Amended Complaint; more than three months after the discovery period closed in this case; one day after the Bank filed its Motion for Summary Judgment; less than four months before the scheduled trial date; and one day after the Court's deadline for all motions to be filed as set forth in the Pretrial Order and Case Management Plan.  (DE No. 42).

In addition to the prejudice to CommunityOne, plaintiffs' delay constitutes bad faith because it is part of a broader pattern of delay and failure to adhere to court orders. For example, plaintiffs: (1) waited five months after the start of the discovery period to serve any written discovery, failed to cooperate in a timely manner on search terms so the Bank could search for responsive electronic discovery and then used the timing of the Bank's subsequent production as purported justification to seek extensions and delays; (2) represented in September 2017 that plaintiffs would be dismissing the claims of eleven plaintiffs prior to November 30, 2017, then after the discovery period ended, failed to do so, forcing a delay of the depositions of those plaintiffs until February 2018 and the court sanctioning those plaintiffs and plaintiffs' counsel (DE No. 62); (3) failed to take any depositions during the fact discovery period, then asked the Court to extend the deadline until January 23, 2018 (DE No. 47-49); (4) failed to take the depositions of four specific individuals after the Court granted it leave to do so after the end of the fact discovery period, and instead sought leave to conduct a 30(b)(6) deposition of CommunityOne in February 2018 (DE No. 50, 58, 59, 65); (5) served additional requests for admissions and requests for production of documents in December 2017 and January 2018 in defiance of the Court's order not to extend the deadline for such discovery (DE No. 50); (6) failed to appear for CCR Data's deposition in November 2017, resulting in the Court imposing sanctions and causing the deposition to be delayed until February 2018; and (7) failed to pay sanctions in a timely manner which resulted in a show cause recommendation by Magistrate Judge Cayer. (DE No. 76).

Now, after CommunityOne filed its motion for summary judgment and after the motions deadline has passed, plaintiffs filed an untimely Motion for Leave to File Second Amended Complaint, which is less of an "amendment" than a completely new set of allegations, theories, and new claims. Plaintiffs cannot win the argument that the core facts in the proposed Second

Amended Complaint are facts they learned in discovery, because the alleged facts are not facts at all.  Also, plaintiffs cannot win the argument that the information in the proposed Second Amended Complaint only became available recently in discovery, because the documents that show the "account analysis" charges and the checks made payable to the Bank upon which plaintiffs base their new allegations were produced to plaintiffs on November 1, 2017, more than four months prior to the date on which plaintiffs filed their motion for leave to amend, and because plaintiffs do not contend that these new allegations came from anything new they learned at the 30(b)(6) deposition of CommunityOne in February 2018.

Accordingly, plaintiffs' untimely motion, coupled with their pattern of dilatory behavior and repeated disregard for this Court's orders, demonstrate bad faith sufficient to deny leave to file their proposed Second Amended Complaint.

### D.  Plaintiffs' Motion For Leave Should Be Denied As Futile.

As the Fourth Circuit has recognized, where a proposed amendment to a complaint would be futile, the amendment should be denied. *Howard,* 302 F. App'x at 181. Plaintiffs' motion to amend is futile for the following reasons.

#### 1.  Plaintiffs' Claims Are Time-Barred.

Plaintiffs' motion for leave to file a proposed Second Amended Complaint is futile because plaintiffs' claims are time-barred.  The events at issue in this lawsuit took place between 2007 and 2009, and plaintiffs did not file their original complaint until August 31, 2015.  (DE No. 1). CommunityOne moved to dismiss the two Uniform Fiduciaries Act claims in the original complaint on statute of limitations grounds. (DE No. 31).  In opposing that motion, plaintiffs claimed in their brief that they were only able to "piece together a puzzle that showed Community One was the epicenter of the fraud" after Jonathan Davey testified in court on February 7, 2013,

which "excited suspicion" and "raised questions about Community One." (DE No. 33, p. 8). This argument put the plaintiffs' "discovery" – according to plaintiffs – within three years of when those two claims were first filed on August 31, 2015, allowing plaintiffs to avoid dismissal at the 12(b)(6) stage when the Court ruled that the three-year statute of limitation on plaintiffs' UFA claims are subject to the discovery rule. (DE No. 42).[9]

Now that plaintiffs' counsel has admitted in the record that plaintiffs "discovery" for purposes of the statute of limitations on claims against CommunityOne occurred no later than February 7, 2013, the new claims being proposed more than five years after that date in the Second Amended Complaint are barred by the applicable statute of limitations.[10] Thus, the motion to amend should be denied on grounds of futility.

2.  Plaintiffs' Proposed Claims Also Fail on the Merits.

In their original complaint, plaintiffs included a claim for conspiracy to violate the federal RICO statute. (DE No. 1, ¶¶ 103-129). In that claim, plaintiffs alleged that Black Diamond was a RICO enterprise and that CommunityOne communicated and conspired with Simmons and Black Diamond to commit mail fraud and money laundering. *Id.* Plaintiffs' federal RICO claim was recommended for dismissal by this Court on August 10, 2016 because plaintiffs failed to plead with any particularity "who Simmons conspired with at CommunityOne, when this alleged

---

[9]  In its Motion for Summary Judgment, CommunityOne relies upon facts learned in discovery to argue that the discovery rule was triggered much earlier than February 7, 2013.

[10]  *Lee v. Moore*, No. COA16-415, 2016 WL 6695833 at *5 (N.C. Ct. App. Nov. 15, 2016) ("[W]ithin five years after the conduct in violation of [NC RICO] terminates or the claim for relief accrues, whichever is later."); *Sebastian v. Davol, Inc.*, No. 5:17-cv-00006-RLV-DSC, 2017 WL 3325744 at *7 (W.D.N.C. Aug. 3, 2017) (*citing* N.C. Gen. Stat. § 75-16.2 and noting four year statute of limitations for North Carolina Unfair and Deceptive Trade Practice claim); *Doe v. Catawba College*, No. COA16-394, 2017 WL 897654 at *2 (N.C. Ct. App. March 7, 2017) *citing* N.C. Gen. Stat. § 1-52 (three year statute of limitations for conspiracy to commit fraud); *Brown v. Brown*, No. COA15-726, 2016 WL 4091236 at *7 (N.C. Ct. App. Aug. 2, 2016) *citing* N.C. Gen. Stat. § 1-52(1), (9) (three year statute of limitations for fraud in inducement).

agreement occurred, where it occurred, how it occurred, or even the precise nature of the agreement." (DE No. 21, p. 10). The Court subsequently issued a Memorandum and Order on September 27, 2016 denying a proposed amendment to that claim as futile. (DE No. 28). Similarly, in their proposed North Carolina RICO claim, plaintiffs fail to allege any of these same facts. At most, plaintiffs allege that the Bank "disregarded or turned a blind eye to unusual account activity and information it had." (SAC, ¶ 214).[11]

Plaintiffs' claims for fraud in the inducement and conspiracy to commit fraud fail because CommunityOne did not owe them a duty to disclose. *See Harton v. Harton,* 81 N.C.App. 295, 298–299, 344 S.E.2d 117 (1986); *see also* DE No. 21, p. 8 (this Court noted when recommending dismissal of plaintiffs' previous conspiracy to breach fiduciary duty claim that plaintiffs "recognize their lack of any direct relationship with CommunityOne."). Finally, the new Uniform Fiduciaries Act claims fail for the same reasons that CommunityOne detailed in its Motion for Summary Judgment. (*See* DE No. 72). Accordingly, because the claims in plaintiffs' proposed second amended complaint are fatally deficient, this Court should deny plaintiffs' motion.[12]

## IV. CONCLUSION

For the foregoing reasons, CommunityOne Bank respectfully requests that the Court deny Plaintiffs' Motion for Leave to File Second Amended Complaint.

---

[11] Plaintiffs' proposed Second Amended Complaint also wholly fails to allege "connection to, or any relationship or involvement with organized unlawful elements, groups or activities." N.C. Gen. Stat. § 75D–2(c). Allowance of plaintiffs' claim under Rule 12(b)(6) would be contrary to the express legislative purpose of the RICO statute. *See Lee v. Moore*, No. COA16-415, 2016 WL 6695833 (N.C. Ct. App. Nov. 15, 2016) (dismissing North Carolina RICO act claim because it was based on nothing more than conclusory allegations).

[12] These arguments are not an exhaustive discussion of the reasons the proposed claims fail as a matter of law.

Respectfully submitted this 2nd day of April, 2018.

s/ H. Landis Wade, Jr.
H. Landis Wade, Jr.
N.C. Bar No. 11134
T. Richmond McPherson, III
N.C. Bar No. 41439
Richard H. Conner, III
N.C. Bar No. 28480
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2000
Email:  lwade@mcguirewoods.com

*Attorneys for CommunityOne Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing **DEFENDANT COMMUNITYONE BANK, N.A.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** by electronic filing, email or U.S. mail, postage prepaid, as indicated below, to the following:

> Edward H. Nicholson, Jr.
> McConnell & Sneed, LLC
> 212 S. Tryon Street, Suite 1725
> Charlotte, NC  28281
> Email:  nicholsonshumaker@att.net
> (by electronic filing)
>
> Jonathan F. Andres
> Jonathan F. Andres P.C.
> 7733 Forsyth Boulevard, Suite 700
> St. Louis, MO  63105
> Email:  andres@andreslawpc.com
> (by electronic filing)
>
> Sebastian Rucci
> Law Offices of Sebastian Rucci
> 16400 Pacific Coast Hwy, Suite 212
> Huntington Beach, CA  92649
> Email:  SebRucci@gmail.com
> (by electronic filing)
>
> *Attorneys for Plaintiffs*

This the 2nd day of April, 2018.

/s/ H. Landis Wade, Jr.
H. Landis Wade, Jr.
*Attorney for CommunityOne Bank*