UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ALBERT YALE, *et al.*, | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 3:15-CV-403-RJC-DSC |
| COMMUNITY ONE BANK, N.A., | ) |
| Defendant. | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Larry Burroughs, CCR Data, Inc., Keith Davey, John McFerren, Missions to Military Account No. 1 and Account No. 2, Safe Harbor Christian Foundation, and Gerald Webber (Plaintiffs) respectfully submit this brief in opposition to the Motion for Summary Judgment (Doc. #72) Defendant CommunityOne Bank (CommunityOne or the Bank) has filed. The other plaintiffs negotiated and signed settlement agreements with the Bank at mediation and their claims, which each has agreed to dismiss, are no longer properly the subject of the instant motion.[1]

## I. INTRODUCTION

Plaintiffs' claims against Defendant CommunityOne Bank (CommunityOne) stem from a Ponzi scheme commonly known as Black Diamond that Keith Simmons (Simmons) operated through an account at the Bank in the name of Black Diamond Capital Solutions LLC (BDCS). Counts I and II in the Amended Complaint (Doc. #30-1) arise under North Carolina's version of the

---

[1] The plaintiffs who settled with the Bank are David & Judy Abel, Patrice Ackerman, Claggett & Sons, Inc., Thaddeus Claggett, Emily Claggett, Edward & Diane Estes, III, Edward Estes, IV, Walter & Kathy Matney, P3T, Ltd., William Richards, John Sargent, Tim Valentine, Mary Lynn Van Horn, Sharon West, Roxanne Wymer, and Albert & Marilyn Yale. Each of the Plaintiffs opposing summary judgment is scheduled to attend mediation of their claims in Charlotte on Friday, April 13, 2018.

Uniform Fiduciaries Act (UFA). Count I alleges CommunityOne had actual knowledge of bad acts Simmons committed with respect to the account in the name of BDCS (BDCS account), and Count II alleges CommunityOne acted in bad faith under the UFA by remaining passive and refusing to learn facts readily available such as the source of the fiduciary funds in the BDCS account.

CommunityOne contends the Bank did not know – and there is no proof the Bank knew – that the BDCS account contained funds and money that belonged to persons other than BDCS. Consequently, CommunityOne argues, there is no proof that the Bank knew Simmons was a fiduciary, that the BDCS account held fiduciary funds, or that Simmons diverted funds from the BDCS account in breach of a fiduciary duty.

The Bank's contentions and arguments rest primarily on three things: Evidence that Simmons ███████████████████████████████████; a sworn declaration of Emily Parsons, the West Jefferson Branch Manager, stating that she had no knowledge that the money in the BDCS account belonged to others and did not belong to BDCS and is unaware of anyone who worked at CommunityOne having such knowledge; and a sworn declaration of Toni Underwood, an Administrative Assistant in the Bank's operations division and responsible for Bank Secrecy Act (BSA) and Anti-Money Laundering (AML) compliance and monitoring large cash transactions, stating that her ███████████████████████████████████ ███████████████████████████████████" were based on information she received from someone (whose name she cannot recall) in the Bank's West Jefferson branch where the BDCS account was ███████████████████████████████████.

The record CommunityOne cites in support of its motion does not consider or tell the whole story. The Bank, as discussed more fully below, and detailed in Plaintiffs' attached Statement of

2

Additional Material Facts, fails to consider or discuss facts from the record showing that, or at least creating an genuine issue of material fact whether, CommunityOne knew that money in the BDCS account did not belong to Black Diamond, that the BDCS account held fiduciary funds, that Simmons was a fiduciary, and that Simmons diverted funds from the BDCS account in breach of a fiduciary duty.

The Bank also contends that Plaintiffs who invested money through Divine Circulation Services, Ltd., (DCS Ltd.), a foreign company incorporated in Belize by Jonathan Davey (Davey), and became shareholders of DCS Ltd. lack standing to bring claims against CommunityOne. Any claims against the Bank for loss of those funds invested in Black Diamond, CommunityOne contends, belong to DCS Ltd., not to shareholders of DCS Ltd. The record shows, however, that these Plaintiffs invested their money in Black Diamond not through DCS Ltd., but via wire transfers from bank accounts maintained by Divine Circulation Services, LLC (DCS LLC), an Ohio limited liability company formed by Davey. As discussed below, Davey testified at his criminal trial that DCS LLC was only a conduit for transmitting funds between a client and the client's investments and that DCS LLC was never considered the owner of any client funds that passed through its bank accounts. For these and the other reasons discussed below, Plaintiffs have standing to bring their claims against CommunityOne here.

Finally, the Bank argues that the claims of Plaintiffs who invested money through DCS Ltd. and became shareholders of DCS Ltd. are barred by the statute of limitations. Citing to the knowledge these Plaintiffs had of the criminal charges against Simmons and Davey for running a Ponzi scheme and taking their money, the Bank contends that Plaintiffs failed to determine what happened to their investment. As evidence of such failure, the Bank faults Plaintiffs for not hiring

a private investigator or attorney to determine what happened and by whom. The statute of limitations question, however, turns on when Plaintiffs knew or should have known through reasonable due diligence of CommunityOne's role in the fraud. The facts relating to whether Plaintiffs knew or should have known of CommunityOne's role in the fraud prior to August 31, 2012, as more fully discussed below, are disputed, inconclusive, and conflicting and the statute of limitations question is therefore one for the trier of fact.

## II. STANDARD OF REVIEW

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In other words, summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *J.D. Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990).

Summary judgment, as a general rule, is seldom appropriate in cases where particular states of mind are decisive elements of a claim or defense. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 3640065 (4th Cir. 1985); *abrogated on other grounds, Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989); *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979). The rationale for this rule is that determination of intent frequently depends upon credibility of witnesses. *Ross*, 759 F.2d at 364; *United States v. Leak*, 123 F.3d 787, 793 (4th Cir. 1997).

### III. STATEMENT OF FACTS

Plaintiffs file herewith and incorporate by reference their Statement of Additional Material Facts in Opposition to Motion for Summary Judgment. The record here provides circumstantial evidence that is sufficient to raise genuine issues of material fact as well as some question of propriety for consideration by CommunityOne that preclude entry of summary judgment or finding that the Bank is entitled to judgment as a matter of law. The record supports a finding by a reasonable trier of fact that CommunityOne Bank had actual knowledge of the fiduciary nature of the BDCS account and Simmons' fiduciary obligations to third party fiduciary funds in the account, and that the Bank apparent failure to make inquiry could support a reasonable inference that the Bank's and its personnel's passiveness amounted to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transactions it was handing for Simmons involving the BDCS account.

### IV. DISCUSSION

**A.** *The Questions of Fact of Whether CommunityOne Knew the BDCS Account Contained Funds that Belonged to Persons Other than BDCS Precludes Summary Judgment.*

The record shows that money flowed into the BDCS account ▮▮▮▮▮▮▮▮▮▮ during the period of approximately August 2007 to June 2009. CommunityOne produced documents in discovery stating that money flowing into the BDCS account came ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and for the benefit of specific individuals and in many instances the individual's ▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs' Statement of Additional Material Facts in paragraph 2, subparts (a) through (zzz), detail more than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ belonging to someone other than BDCS flowed into the BDCS account.

5

Simmons and BDCS had an obligation not to treat as their own money any funds deposited into the BDCS account that belonged to someone else or funds deposited into the account for the benefit of another person. The record plainly shows that CommunityOne consistently and without hesitation assisted and facilitated Simmons' use of the millions of dollars deposited into the BDCS account, including the funds from a trust company and expressly designated for the benefit of specific individuals, as if the money belonged to him and BDCS.

CommunityOne's knowledge and understanding of the BDCS account during 2007 to 2009 are facts material to Plaintiffs' claims. The Bank points to Simmons opening ███████████ ███████████ and submits the former manager's declaration denying any knowledge on her part or anyone else at the Bank that funds in the BDCS account belonged to anyone other than BDCS. The record in this case, however, supports a conclusion that CommunityOne acted with knowledge that money from IRA accounts, an IRA trust company, an estate planning services provider, and money expressly designated for the benefit of other people was flowing in large amounts and on a regular basis into the BDCS account, and the conclusion that the Bank knew Simmons had fiduciary obligations to such monies in the BDCS account.

Under the UFA, Plaintiffs must prove that CommunityOne acted with actual knowledge that Simmons was committing a breach of his fiduciary duty or that the Bank's actions amounted to bad faith under the Act. *Edwards v. Northwestern Bank*, 39 N.C. App. 261, 250 S.E.2d 651 (1979). Mere failure to make inquiry does not constitute bad faith under the UFA. A showing of bad faith requires "a showing of facts and circumstances so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction[,]" that is to say, "where there is an intentional closing of the eyes or stopping of the ears." *Id*. (citations omitted).

Determining whether the Bank acted with actual knowledge and whether its actions were done in bad faith are each dependent on proof that CommunityOne acted with a particular state of mind. *Id*. at 657; *see also, United States v. Leak*, 123 F.3d 787, 793 (4th Cir. 1997). Consequently, "[w]hen the state of mind of a person is at issue and the record contains direct evidence of that state of mind in the form of that person's sworn statement, conflicting circumstantial evidence normally creates only an issue of credibility for trial and summary judgment is inappropriate." *Leak* at 793.

The court in *Edwards* reached the same conclusion and reversed a summary judgment for defendant bank on plaintiff's claim of actual knowledge and bad faith under the UFA. A defendant–movant for summary judgment on such claims, in order to meet his initial burden on a motion for summary judgment, "must at least produced more than a mere denial by affidavits that he acted with the state of mind alleged by plaintiff." *Edwards* at 656. The evidence in support of the motion "must again be of the necessary certitude as to negative any one or more of the essential elements of plaintiff's claim." *Id*.

The court found the bank officer's affidavit in *Edwards* "amounted to no more than a general denial of plaintiff's allegations that defendant Bank's officers acted with knowledge of any breach of fiduciary obligation or in bad faith." Circumstantial evidence in that case and the "peculiar nature" of the transactions, the court found, "was in itself sufficient to raise some question of propriety" for consideration by the bank. *Id.* The court found the bank's "apparent failure to make inquiry" in that case could support a reasonable inference that the bank officer's "passiveness amounted to a deliberate desire to evade knowledge" because of a belief or fear that inquiry would disclose a defect in the transaction. *Id*. at 658.

Here, the record is full of circumstantial evidence that conflicts with the direct evidence of the state of mind of Ms. Parsons and Ms. Underwood in the form of their declarations. Under the

7

sound analysis in *Edwards* and correct reasoning in *Leak*, summary judgment on Plaintiffs' UFL claims is inappropriate because the conflict between the circumstantial evidence and the declarations is stark and creates an issue of credibility for trial.

### B. *Expert Testimony is Not Needed to Support The Bad Faith Claim in Count II.*

As noted earlier, a showing of bad faith requires "a showing of facts and circumstances so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction[,]" that is to say, "where there is an intentional closing of the eyes or stopping of the ears." *Edwards* at 657 (citations omitted). Plaintiffs allege in Count II that it was bad faith for the Bank to remain passive under the obvious circumstances suggestive of Simmons' misconduct and activity in the BDCS account.

CommunityOne's reliance on the unpublished decision, *Pernikoff Constr. Co. v. U.S. Bank, N.A.*, No. 4:09CV894 JCH, 2010 WL 3258399 (E.D. Mo. Aug 16, 2010) for the argument that Plaintiffs here need expert testimony for their bad faith claim is misplaced. In *Pernikoff*, plaintiff brought a claim under the Uniform Fiduciaries Law, Missouri's version of the Uniform Fiduciaries Act, and the dispute centered largely on reasonable banking practices with respect to automated processing of checks. *Id*. at *5. Plaintiff argued that defendant's automated check cashing procedures were unreasonable but failed to offer any evidence that the bank deviated from its own procedures or that its procedures were unreasonable. Consequently, in the absence of expert testimony to support that contention, the court dismissed plaintiff's UFL claim for bad faith. *Id*.

Here, whether it was reasonable for CommunityOne to sit passively and refuse to learn facts readily available to it that Simmons was looting fiduciary funds out of the BDCS account and violating his fiduciary obligations to those funds does not require expert testimony. The circumstantial evidence of what the Bank did conflicts with its BSA and AML policies and ▇

████████████████ contained and described in documents and deposition testimony in the record and detailed in relevant part in the Statement of Additional Material Fact. The circumstantial evidence establishes that CommunityOne deviated from its customer monitoring policies and ongoing due diligence requirements.

CommunityOne Bank failed to comply with its internal policies and procedures to determine the nature and purpose of the BDCS account on an ongoing basis. During 2007 to 2009, the nature and purpose of the account changed and the Bank failed to comply with ████████████ ████████ and the Bank's internal policies of ████████████████ and understanding the changing nature and purpose of BDCS and the BDCS account.

During 2007 to 2009, ████████████████ into the BDCS account. The influx of these fiduciary funds evidenced and represented a change in the nature and purpose of the account. BDCS had gone from a consulting business to a business that was ████████████████████ ████████████████ of third parties. But for a change in the nature and purpose of BDCS's business, there was no other reason why BDCS would begin receiving hundreds of thousands, and indeed millions, of dollars in ████████████████

The Bank's representative explained the Bank's internal policies and procedures that were to be followed but, as evidenced by CommunityOne's failure to monitor and update the nature and purpose of the BDCS account on an ongoing basis.

During 2007 to 2009, the concept of Know Your Customer was one way for CommunityOne to comply with the Bank Secrecy Act. Day Depo. at 50 The Bank's policies, procedures, and monitoring were all part of the Know Your Customer concept. Day Depo. at 50. During 2007 to 2009, monitoring customer accounts was one mean by which CommunityOne sought to comply with the Bank Secrecy Act and other banking laws. Day Depo. at 51. Account monitoring gives the Bank

9

a reasonable understanding that it knows the customer. Day Depo. at 51 Communication with customers is one method by which CommunityOne Bank obtains a reasonable understanding that it knows the customer, and monthly account statements are one way the Bank communicates with customers. Day Depo. at 51–52.

During 2007 to 2009, monitoring at CommunityOne in compliance with the Bank Secrecy Act and banking laws included monitoring the customer's account and analyzing the account, which might be called account analysis or something similar. Day Depo. at 53–54. CommunityOne also monitored customers through the Bank's customer identification program. Day Depo. at 54. During 2007 to 2009, CommunityOne engaged in due diligence and customer due diligence as methods of complying with the Bank Secrecy Act Day Depo. at 55–56. The Bank's customer identification program was designed to help understand who the customer is and customer due diligence was intended to make sure CommunityOne understood and, to the best of its ability, knew the customer. Day Depo. at 56.

During 2007 to 2009, the monitoring and due diligence policy at CommunityOne called for checking customer account statements and wire transactions for unusual activity. Day Depo. at 56–57. Unusual activity in this context is activity that is inconsistent with the customer's normal behavior, and a fluctuation in the amounts of deposits into the account is an example of unusual transactions. Day Depo. at 57–59. Wire transfer review for volume, frequency or changes in wire transfer activity or indicators of money laundering was part of the compliance training and materials for employees at CommunityOne in 2007. Day Depo.

During 2007 to 2009, understanding and monitoring the nature of a customer's business was part of the monitoring and due diligence policy at CommunityOne. Day Depo. at 71–72. During 2007 to 2009, the customer identification program at CommunityOne included reminding them of their

duty to monitor new and existing accounts for unusual or illegal activities, and the duty to monitor existing accounts was a continuing and ongoing duty. Day Depo. at 75–76.

During 2007 to 2009, the customer identification program applied to all formal bank relationships established with consumers and business to provide or engage in services, and services in that context included wire transfers. Day Depo. at 78. During 2007 to 2009, visiting a customer's place of business was one method for CommunityOne to know the customer or monitor the customer or conduct due diligence. Day Depo. at 81. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Day Depo. at 81–82, COMM054404 During 2007 to 2009, consulting the Internet was one possible and acceptable way for CommunityOne to get information about a customer. Day Depo. at 84.

During 2007 to 2009, CommunityOne recognized as part of its customer identification program that banking laws required that transactions that are not consistent with customary practice or the customer's type of business be reported to an officer for review as suspicious activity. Day Depo. at 86. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Day Depo. at 86–87, COMM54405

The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ basis. COMM054689, Day Depo. at 93–94. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. COMM054689, 55140

The Bank ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ continuing due diligence and monitoring of its

customers and their account activity. Day Depo. at 17–18, 100–101, COMM054777 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ COMM054767, Day Depo. at 101–102, 130–131 These included assigning a North American Industry Classification System (NAICS) code, using the U.S. Census Bureau website to find the proper code, to each customer's account based on the nature of the customer's business. COMM054767 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. COMM054767

CommunityOne's failure to follow its own policies and procedures in monitoring the nature and purpose of the BDCS account was unreasonable and resulted in the Bank remaining passive when it had information that should have prompted it to act, all of which amounted to bad faith under the UFA.

In short, the reasoning in *Pernikoff* does not apply the claims and circumstances here, and expert testimony is not needed to show that CommunityOne acted in bad faith under the UFA.

**D.    Plaintiffs Who Invested Their Money with Divine Circulation Services Ltd. Have Standing to Bring Their Claims Against the Bank.**

Davey formed and registered Divine Circulation Services Ltd. (DCS Ltd.) in the country of Belize 2007. Davey at 591. Prior to that, Davey formed and registered Safe Harbor Ventures (Safe Harbor) in Delaware in 2005. Davey at 596. A subsidiary of Safe Harbor was Divine Circulation Services, LLC, (DCS LLC) an Ohio limited liability company. Davey 616 However, DCS LLC had no relationship with DCS Ltd. Davey at 616 Davey explained at his trial that DCS LLC "is only a conduit for the efficient transmission of funds between clients and client's investments. At no time will Divine Circulation Services, LLC, or Safe Harbor Ventures, Inc., be considered the owner of

any of the client's funds that pass through Divine Circulation Services, LLC's bank account." Davey at 642.

The Private Placement Memorandum ("PPM") that CommunityOne cites was issued by DCS Ltd. and offered to make persons shareholders in DCS Ltd. Nothing in the record shows or establishes that Plaintiffs were or are shareholders of DCS LLC. Despite the representations in the PPM, Davey filled out and signed a form stating that he was the sole shareholder of DCS Ltd. Today, DCS Ltd. is shown as inactive on the Belize International Corporate Registry. IBCR doc. Moreover, the DCS Plaintiffs never received any stock certificates evidencing ownership or status as shareholders. Similarly, they never received any tax forms or notices of shareholder meetings from DCS Ltd. Instead, the record shows that the DCS Plaintiffs' money given to Davey flowed through bank accounts belonging to DCS LLC and was then wired from the DCS LLC accounts to the BDCS account. Govt Exh 210(a), 210(b).

In litigation involving the Commodities Futures Trading Commission, Davey and DCS LLC motioned this Court for permission to distribute money to the DCS Plaintiffs that Davey had taken out of Black Diamond and invested in Europe. (Doc. #90) at 1 This Court denied the motion and in its order found that those funds "currently belong to DCS [LLC], not its shareholders." (Doc. #90) at 3.

Finally, the DCS Plaintiffs are not seeking recovery against CommunityOne for loss of stock value. Their money did not flow through any bank account belonging to DCS Ltd. but instead through bank accounts of DCS LLC. As noted above, DCS LLC was never considered the owner of client funds flowing through its accounts; that money was treated and considered as belonging to the individual DCS Plaintiffs.

DCS Ltd. was a sham company that offered to sell shares to the DCS Plaintiffs but it appears

13

never did. Instead the DCS Plaintiffs money flowed through DCS LLC, a company in which none of them are shareholders. In short, based on the record and for these reasons, Plaintiffs have standing to assert their claims against CommunityOne.

### E. *The DCS Plaintiffs' Claims are Not Barred by the Statute of Limitations.*

CommunityOne argues that because Plaintiffs knew of the fraud involving Simmons and Davey and their criminal charges, Plaintiff should have therefore discovered their claims against CommunityOne by August 31, 2012. Just because Plaintiffs knew of the fraud perpetrated by Simmons and Davey does not mean they failed to exercise reasonable diligence in discovering, or knew or should have known of, CommunityOne's involvement.

Plaintiffs never received any information from the government or victim notification service that CommunityOne had any involvement. And even if they had known of the Information filed against the Bank – which they did not – even CommunityOne concedes that:

> [Nothing in the Bill of Information contends that the Bank was complicate in Simmons' activities. Nor does it contend that the Bank had any sort of agreement or understanding with Simmons about his actions. Indeed had that been the case, the charge [against the Bank] would have been entirely different.

*Defendant's Brief* (Doc. #10) at 19.

Unlike Simmons and Black Diamond whose fraud was made public through criminal prosecution, Plaintiffs knew nothing of CommunityOne's potential involvement until after August 31, 2012. Hence, the statute of limitations question here is a mixed question of law and fact. *See First Inv'rs Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 689 (W.D.N.C. 1991), *aff'd*, 956 F.2d 263 (4th Cir. 1992) (stating that in general, whether a claim is barred by a statute of limitation is a mixed question of law and fact). "When a fraud should have been discovered in the exercise of reasonable

diligence generally is a question for the jury, especially when the evidence is 'inconclusive or conflicting.'" *W. Franklin Pres. Ltd. P'ship v. Nutur N. Carolina, LLC*, 2015 WL 5693124, at *15 (M.D.N.C. Sept. 28, 2015) (quoting *Hudgins v. Wagoner*, 694 S.E.2d 436, 442 (N.C. Ct. App. 2010)). Because the discovery rule applies to Plaintiffs' claims, the statute of limitations question is one of both fact and law and should be decided by the trier of fact.

## CONCLUSION

For the foregoing reasons, Defendant CommunityOne Bank, N.A.'s Motion for Summary Judgment should be denied.

Respectfully submitted,

| | |
|---|---|
| NICHOLSON LAW FIRM, P.A.<br>Edward H. Nicholson, Jr.<br>(NC Bar No. 36123)<br>212 S. Tryon St., Ste. 1725<br>Charlotte, NC 28281<br>Tel: (704) 223-2406<br>Email: nicholsonshumaker@att.net<br><br>LAW OFFICES OF SEBASTIAN RUCCI<br>Sebastian Rucci (E.D. Mo. 178114CA)<br>Admitted pro hac vice<br>16400 Pacific Coast Hwy, Suite 212<br>Huntington Beach, CA 92649<br>Tel: (330) 720-0398<br>Email: SebRucci@gmail.com<br><br>Attorneys for Plaintiffs | JONATHAN F. ANDRES P.C.<br><br>/s/ Jonathan F. Andres<br>Jonathan F. Andres (E.D. Mo. 39531MO)<br>Admitted pro hac vice<br>1127 Hoot Owl Rd.<br>St. Louis, MO 63005<br>Tel. (636) 633-1208<br>Email: andres@andreslawpc.com |

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2018 copy of the foregoing was filed electronically, with a copy of this filing to be served to all parties, via the Court's electronic filing system.

/s/ Jonathan F. Andres