UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00403-RJC-DSC

| | |
|---|---|
| ALBERT YALE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| COMMUNITY ONE BANK, N.A., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant CommunityOne, N.A.'s Motion for Summary Judgment, (Doc. No. 71); it's Memorandum in Support, (Doc. No. 72); Plaintiffs' Response in Opposition, (Doc. No. 81); and Defendant's Reply, (Doc. No. 84). Also before the Court is Defendant's Motion for Order to Show Cause, (Doc. No. 68); the Magistrate Judge's Memorandum and Recommendation ("M&R"), recommending the Court grant Defendant's Motion, (Doc. No. 76); and Plaintiffs' Objection to the Magistrate Judge's Order denying leave to file a second amended complaint, (Doc. No. 91).

## I.     BACKGROUND

A. Procedural Background.

On August 31, 2015, Plaintiffs filed a Complaint against Defendant. (Doc. No. 1). On December 9, 2015, Defendant filed a Motion to Dismiss, (Doc. No. 9), which the Magistrate Judge recommended the Court grant in part and deny in part, (Doc. No. 21). On October 11, 2016, Plaintiffs filed an Amended Complaint authorized by

1

the Magistrate Judge. (Doc. No 29). Defendant then filed a second Motion to Dismiss, (Doc. No. 31), which the Magistrate Judge recommended the Court deny, (Doc. No. 35). On February 14, 2017, the Court took both of the Magistrate Judge's M&R's regarding the two motions to dismiss under advisement and granted and denied Defendant's motions in part. (Doc. No. 38). Several of Plaintiffs' claims were dismissed with prejudice as a result.

On January 25, 2018, the Magistrate Judge entered a Memorandum and Order sanctioning one of the plaintiffs in this case, CCR Data, and its counsel for failing to appear at a deposition. (Doc. No. 61). On March 1, 2018, Defendant filed its Motion to Show Cause, (Doc. No. 68), which the Magistrate Judge recommended the Court grant due to CCR Data's failure to pay the amount sanctioned in the January 25th order on March 20, 2018, (Doc. No. 76). On March 16, Defendant filed its Motion for Summary Judgment. (Doc. No. 71). On March 17, Plaintiffs filed a Motion to File a Second Amended Complaint, (Doc. No. 17), which the Magistrate Judge denied as untimely on April 24, 2018, (Doc. No. 89). Plaintiff objects to the Magistrate Judge's Order. (Doc. No. 91).

B. <u>Factual Background.</u>

Plaintiffs[1] were alleged victims of a Ponzi scheme orchestrated by Keith Simmons and Jonathan Davey. (Doc. Nos. 72 at 2; 82 at 1). This action does not target Simmons or Davey, but rather pursues claims against CommunityOne Bank,

---

[1] Many of the Plaintiffs in this case have settled. The remaining Plaintiffs are all considered "DCS Plaintiffs"—those that Jonathan Davey enticed to invest in Divine Circulation Services.

2

N.A. alleging violations of North Carolina's Uniform Fiduciaries Act. (Doc. No. 72 at 1).

The Ponzi scheme in question is commonly referred to as "Black Diamond." It operated through an account named "Black Diamond Capital Solutions, LLC" ("BDCS") set up under Defendant by Simmons. (Doc. No. 82 at 1). Defendant's records conflict as to the business description for the BSCS account. In 2005, the account's opening records showed that Black Diamond was a "consulting" business. (Doc. No. 72 at 13). In 2008, records indicated that Black Diamond operated as a business for acquisition, development, and permanent financing of commercial real estate. Other 2008 records showed that Black Diamond also engaged in "Investment Advice." (Id.).

From April of 2007 to December of 2009, Simmons and others solicited over 400 investments for BDCS. (Doc. No. 29 ¶5). The investments amounted to approximately $35 million. (Id.). Simmons used the majority of the funds to make $18 million in bogus interest payments to investors, inducing them to invest further in Black Diamond. (Id. ¶12). By October of 2009, purported quarterly statements indicated that Black Diamond's investors' assets had grown to approximately $423 million. In reality, the assets shrank down to around $500. (Id. ¶16).

While executing his Ponzi scheme, Simmons deposited money into various bank accounts. One of these accounts was the BDCS account created under Defendant. (Id. ¶18). Plaintiffs assert that "Community One Bank at all times relevant understood and was well aware of the fiduciary nature of the Black Diamond

3

account at the Bank." (Doc. No. 29 at ¶21). "The Bank knew that account held investor funds, was to serve as a conduit for investor funds, and was fiduciary in nature." (Id.).

Investments into the BDCS account came from a variety of sources. Payments came into the bank from IRA and estate planning accounts. (Doc. No. 82 at 5). Plaintiffs' funds were not directly deposited into the BDCS account, though. Rather, Plaintiffs' investments were solicited by Davey and funneled into Divine Circulation Services, LLC ("DCS LLC"), an Ohio-based LLC. (Id. at 3). DCS LLC told Plaintiffs it would invest money in foreign currency exchange programs. (Doc. No. 72 at 3). Some, but not all, of DCS LLC's funds were then sent to the BDCS account maintained by Simmons at Defendant bank. (Id. at 4).

In December of 2009, Davey sent an email to DSC investors explaining that he invested some of their funds in Black Diamond and that the principle of that account had been seized by the FBI based on charges of money laundering, wire fraud, and securities fraud. (Doc. No. 72-7 at 20). By February, 2012, Davey was also criminally charged in connection with Simmons' Black Diamond Ponzi scheme.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if

it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly

5

supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Surviving Defendant's volley of Motions to Dismiss and Plaintiffs' amendment of their Complaint are Plaintiffs' claims that Defendant violated North Carolina's Uniform Fiduciaries Act ("UFA"). The UFA states:

> If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.

N.C.G.S. § 32-9. Under the UFA, banks are liable when they pay a check drawn from a principal's account by a fiduciary if: (1) the bank has actual knowledge that the fiduciary was committing a breach of his duties by drawing the check for improper purposes; or (2) the bank's actions in paying the check amounted to bad faith. See Edwards v. Nw. Bank, 250 S.E.2d 651, 656 (N.C. Ct. App. 1979). While Plaintiffs attempt to allege both of these theories, (Doc. No. 82 at 2), their UFA claims ultimately fail on statute of limitations grounds.

6

This Court has already confirmed that UFA claims are subject to a three-year statute of limitations triggered by the discovery rule. While ruling on Defendant's Motion to Dismiss, the Court stated:

> [T]he discovery rule under N.C. Gen. Stat. § 1-52(9) applies to Plaintiffs' UFA claims and Plaintiffs' knowledge of the fraud and the reasonableness of their due diligence are fact-intensive questions that cannot be settled at this time.
>
> 'As a matter of well-settled North Carolina law, claims sounding in fraud and negligent misrepresentation must be brought within three years of discovery of the facts constituting the fraud or negligence.' Landmar, LLC v. Wells Fargo Bank, N.A., 978 F. Supp. 2d 552, 561 (W.D.N.C. 2013) (citing N.C. Gen. Stat. § 1–52(9)).

Yale v. Cmty. One Bank, N.A., 315CV00403RJCDSC, 2017 WL 4422357, at *3 (W.D.N.C. Feb. 14, 2017). Under the discovery rule, "[f]or relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1-52(9).

Plaintiffs filed their Complaint on August 31, 2015. (Doc. No. 1). At the motion to dismiss stage, the Court concluded that the question of Plaintiffs' discovery could not be settled because "it is unclear when Plaintiffs knew or should have known through reasonable due diligence Defendant's alleged role in the fraud, at least while viewing the pleadings in the light most favorable to Plaintiffs." Yale, 2017 WL 4422357, at *3. Now, on summary judgment with the benefit of discovery having been completed, Defendant argues that Plaintiffs were aware—or should have been aware—of facts prior to August 31, 2012, that would have warranted a reasonable

7

plaintiff to investigate and discover any claims arising from their losses in DCS. (Doc. No. 72 at 24). The Court agrees.

Defendant has shown that multiple plaintiffs in this case met with the FBI prior to August 31, 2012. (Id.). All Plaintiffs knew of the criminal charges against Simmons by early 2010. (Id.). Most of the plaintiffs in this case followed Davey's trial, who was charged on February 22, 2012. (Id.). These events, Defendant argued, should have prompted a reasonable plaintiff to investigate any claims against the bank. (Id.). Plaintiff responds, arguing that, just because they knew of the fraud involving Simmons and Davey does not necessarily warrant the discovery of claims against Defendant as a bank by August 31, 2012. (Doc. No. 82 at 10). No information provided by the government indicated that CommunityOne was specifically involved. (Id.).

Behind the discovery rule is the concept that "a plaintiff cannot simply ignore facts which should be obvious to him or would be *readily discoverable upon reasonable inquiry.*" Wilson v. Pershing, LLC, 801 S.E.2d 150, 159 (N.C. Ct. App. 2017) (quoting S.B. Simmons Landscaping & Excavating, Inc. v. Boggs, 192 N.C.App. 155, 161-62, 665 S.E.2d 147, 151 (2008)). The Court does not find evidence that plaintiffs knew Black Diamond was an account held under CommunityOne. That being said, the question still remains: could Plaintiffs have discovered CommunityOne's involvement upon reasonably inquiry? While analyzing a plaintiff's due diligence is usually an inquiry of fact left for the jury, "[f]ailure to exercise due diligence may be determined as a matter of law … where it is clear that there was

8

both capacity and opportunity to discover[ ] the mistake [or fraud]." Mountain Land Properties, Inc. v. Lovell, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014) (quoting Spears v. Moore, 551 S.E.2d 483, 485 (N.C. Ct. App. 2001)).

There is no question that Plaintiffs were aware of Simmons and Davey's alleged criminal activity. Davey sent an email in December of 2009 to DCS investors warning them that their funds were invested into a company called Black Diamond and that the principal of Black Diamond had been seized by the FBI based on charges of money laundering, wire fraud, and securities fraud. (Doc. No. 72-7 at 20). Furthermore, Plaintiffs do not deny that they were made aware of Simmons', and later Davey's, fraud. Rather, Plaintiff argues, "Just because Plaintiffs knew of the fraud perpetrated by Simmons and Davey does not mean they failed to exercise reasonable diligence in discovering, or knew or should have known of, CommunityOne's involvement." (Doc. No. 82 at 10). During oral argument, Plaintiffs' counsel repeatedly asserted that Plaintiffs were aware of the criminal proceedings, they just weren't aware of any allegations against Defendant.

While Plaintiffs may not have been aware of the allegations that Defendant failed to monitor how Simmons used the funds in the Black Diamond account, the Court finds that there was a clear capacity and opportunity to discover Defendant's potential liability when Plaintiffs were made aware that their funds were put into the Black Diamond account and that Simmons was arrested by the FBI. As the Court pointed out during oral argument, Plaintiffs were heavily invested in this account and made aware of a flurry of litigation. Davey's email was the first red flag received

9

by DCS investors and it was not the last. Several public records, which the Court takes judicial notice of, confirms this. First, in 2011, the Department of Justice Office of Public Affairs released a press statement stating that "CommunityONE Bank N.A., based in Asheboro, N.C., with 45 offices throughout the state, has entered into a deferred prosecution agreement with the Department of Justice related to its failure to file a suspicious activity report (SAR) and maintain an effective anti-money laundering program."[2] That press release specified that CommunityOne's deferred prosecution agreement came as a result from its handling of Simmons' ponzi scheme. Id. In February of 2012, the Charlotte Division of the FBI published a press release announcing that a federal grand jury returned an indictment against Jonathan D. Davey.[3] That same press release explicitly mentioned Simmons, BDCS, and their connection to CommunityOne.

So the requisite knowledge triggering the running of the statute of limitations was a few clicks away, and readily obtainable by the exercise of reasonable diligence. Not only did the charges against Simmons and Davey put Plaintiffs on notice that Defendant may have failed to monitor the use of their funds by a fiduciary, but several

---

[2] Press Release, Department of Justice, North Carolina Bank Agrees to Pay $400,000 in Restitution to Victims of Investment Fraud Scheme It Failed to Detect and Report (April 27, 2011), https://www.justice.gov/opa/pr/north-carolina-bank-agrees-pay-400000-restitution-victims-investment-fraud-scheme-it-failed.

[3] Press Release, Federal Bureau of Investigation, Four Hedge Fund Managers Indicted in $40 Million Ponzi Scheme (Feb. 23, 2012), https://archives.fbi.gov/archives/charlotte/press-releases/2012/four-hedge-fund-managers-indicted-in-40-million-ponzi-scheme.

publications connected CommunityOne explicitly to those criminal charges prior to August 31, 2012.

B. <u>Defendant's Motion for Order to Show Cause</u>

On March 1, 2018, Defendant filed a Motion for an order requiring Plaintiff CCR Data Systems and Plaintiffs' counsel to appear and show cause as to why they did not comply with the Court's Order granting sanctions. (Doc. No. 68). The Magistrate Judge wrote an M&R recommending the Court grant Defendant's motion. (Doc. No. 76). CCR Data Systems has since filed a response, stating that on March 27, 2018, Plaintiffs' counsel received from a third party the funds necessary to pay the Court's ordered sanctions. (Doc. No. 83). Plaintiff's counsel then immediately wired the funds to Defendant's trust account. (Id. at 1–2). Noting that Plaintiff has since paid the necessary fine, albeit late, the Court **DENIES** Defendant's Motion for an Order to Show Cause, (Doc. No. 68).

C. <u>Plaintiffs' Objection the Magistrate Judge's</u>

Plaintiffs objects the Magistrate Judge's April 24, 2018, order denying leave to file a second amended complaint for untimeliness, (Doc. No. 89), arguing that they had until March 16, 2018, to file dispositive motions. (Doc. No. 91). Plaintiffs filed their Motion for Leave to File an Amended Complaint on March 17, 2018. (Doc. No. 73).

The Court reviews a Magistrate Judge's order on a non-dispositive matter by assessing whether or not it was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The Court's Pretrial Order and Case Management Plan clearly states, "All

motions except motions *in limine* and motions to continue shall be filed no later than March 16, 2018. Parties may not extend this deadline by agreement and stipulated extensions of the completion of discovery do not extend the Motions Deadline." (Doc. No. 42 at 3–4). Plaintiffs fail to argue how the Magistrate Judge's interpretation of this language was clearly erroneous or contrary to law. As such, Plaintiffs' objection to the Magistrate Judge's order, (Doc. No. 91), is **DENIED**.

I. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant CommunityOne, N.A.'s Motion for an Order to Show Cause, (Doc. No. 68), is **DENIED**;

2. Defendant CommunityOne, N.A.'s Motion for Summary Judgment, (Doc. No. 71), is **GRANTED;**

3. Plaintiffs' objection to the Magistrate Judge's order, (Doc. No. 91), is **DENIED**; and

4. The Clerk of Court is directed to close this case.

Signed: August 20, 2018

Robert J. Conrad, Jr.
United States District Judge